IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JAMMIE MOORE | * | |
| Plaintiff, | * | |
| | | Civil Action No. 8:25-cv-03033-PX |
| v. | * | |
| CITIMORTGAGE, INC., et al. | * | |
| Defendants. | * | |

\*\*\*

**<u>MEMORANDUM OPINION</u>**

Pending is Defendants CitiMortgage, Inc. ("CitiMortgage")'s and Cenlar FSB ("Cenlar")'s Motions to Dismiss for failure to state a claim. ECF Nos. 24 & 25. The issues are fully briefed, and no hearing is necessary. See Loc. R. 105.6. For the following reasons, Cenlar's motion to dismiss is granted, and CitiMortgage's motion to dismiss is granted in part and denied in part.

### I.    Background

This case concerns the real property at 2701 Avena Street, Silver Spring, Maryland (hereinafter "the Property"). ECF No. 21 ¶ 1. In January 2008, Plaintiff Jammie Moore ("Moore") and his then-wife Leah Tafalla ("Tafalla") purchased the Property by securing a mortgage loan with CitiMortgage. *Id*. ¶ 7. Moore and Tafalla executed a Note and Deed of Trust in connection with the loan. *Id*. ¶ 8. In June 2014, Moore initiated divorce proceedings in the Montgomery County Circuit Court against Tafalla ("the Divorce case"). *Id*. ¶ 9. As part of the Divorce case, Tafalla conveyed her interest in the Property to Moore in March 2017, and she was removed from the Deed of Trust. *Id*. ¶ 11.

Approximately two months later, in May 2017, CitiMortgage asked the Court in the Divorce case to foreclose and sell the Property. *Id*. ¶ 12. Protracted negotiations ensued, and in

November 2019, Moore and CitiMortgage agreed on a loan modification as part of the Divorce case ("the Divorce modification"). *Id*. ¶ 13. On December 9, 2019, the Divorce modification became final. ECF No. 25-2 at 9. On December 23, 2019, counsel for CitiMortgage represented to Moore, Tafalla, and the Circuit Court in a hearing that it would release Tafalla from any obligation on the mortgage loan. ECF No. 21 ¶¶ 13–14. That same day, the Circuit Court approved the Divorce modification and decreed that "Leah Tafalla, is hereby released from any obligation on the promissory note and the Deed of Trust." ECF No. 26-1. Accordingly, as of December 23, 2019, Tafalla no longer owned the property with Moore, nor did she have any obligation to pay the mortgage, and CitiMortgage knew that. *Id*.; ECF No. 21 ¶ 14.

In 2020, the COVID pandemic affected Moore financially, which prompted Moore to receive a loan forbearance under the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), 15 U.S.C. § 9056. ECF No. 21 ¶ 16. When the forbearance period ended, however, Cenlar, the mortgage servicer and agent of CitiMortgage, demanded that Moore pay the outstanding CitiMortgage loan amount in one lump sum, which Moore could not do. *Id*. ¶ 17. Moore next sought a loan modification with CitiMortgage, which Defendants "failed and refused to review and approve." *Id*. ¶ 18.

Despite Tafalla having been removed from both the mortgage loan and Deed of Trust, Defendants sued Moore and Tafalla in Montgomery County Circuit Court ("the Foreclosure action") on September 15, 2023. ECF No. 21 ¶ 19. Next, Cenlar informed Moore that CitiMortgage had approved a loan modification to be executed *with* Tafalla as a co-obligor. *Id*. ¶ 21. Moore objected and asked Cenlar to remove Tafalla from the proposed loan modification agreement. *Id*. ¶ 22. Instead, Cenlar revoked the proposed loan modification and told Moore that he was no longer eligible for a future loan modification. *Id*. ¶ 23. Nearly two years later, on

September 3, 2025, the Circuit Court dismissed the Foreclosure action as "improvidently pursued in light of representations on behalf of CitiMortgage in open court on December 23, 2019, and the express terms of the Divorce Court's [December 23, 2019] Order[] docketed on or about January 6, 2020." *Id.* ¶ 24.

This suit followed. Moore originally filed in Circuit Court against CitiMortgage and Cenlar. ECF No. 3. After Defendants noted timely removal and moved to dismiss the original complaint, ECF Nos. 1, 14, & 15, Moore next amended the complaint as of right, mooting the motions to dismiss. In the Amended Complaint, Moore sues Defendants for common law claims of intentional misrepresentation ("fraud"), breach of contract, and negligent misrepresentation (Counts I–III); statutory violations of the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Comm'l Law §§ 13-101 *et seq*., and the Maryland Consumer Debt Collection Act Claim ("MCDCA"), Md. Code Ann., Comm'l Law §§ 14-201 *et seq.*, (Count IV); and a violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, (Count V). Defendants now move to dismiss all claims as insufficiently pleaded. ECF Nos. 24 & 25.

## II.    Standard

A motion to dismiss brought pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. *See Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). The Court must accept "the well-pled allegations of the complaint as true" and most favorably to the nonmovant. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). To survive a motion to dismiss, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). The Court, however, need not credit naked legal conclusions devoid of factual support. *See Ashcroft v.*

3

*Iqbal*, 556 U.S. 662, 678–79 (2009).  Rather, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

With this standard in mind, the Court first turns to the common law claims.

### III.    Analysis

#### a.    Fraud/Negligent Misrepresentation

Because "[f]raud and negligent misrepresentation share common elements," *Gross v. Sussex Inc.*, 630 A.2d 1156, 1162 (Md. 1993), the Court will assess the sufficiency of the claims together.  To make plausible either claim, the plaintiff must allege a false statement of a material fact on which he relied to his detriment, causing damages.  *Id.  See also Brodsky v. Hull*, 77 A.2d 156, 159 (Md. 1949).  The "critical difference" between the two claims is scienter; fraud requires the defendant to have made the statement knowingly or with reckless disregard to its falsity, whereas negligent misrepresentation "only requires conduct which falls below the standard of care the maker of the statement owes to the person to whom it is made."  *Gross*, 630 A.2d at 1162.

Moore's theory of misrepresentation is simple: CitiMortgage lied in the Divorce case on December 23, 2019, when it told Moore, Tafalla, and the Circuit Court that Tafalla was released from the mortgage loan and Deed of Trust.  ECF No. 21 ¶¶ 25–33, 43–51.  Accordingly, when CitiMortgage reversed course in 2023, it became clear how Moore had relied on the prior false statement to his detriment.  *Id.*

CitiMortgage, for its part, argues the claims fail because promises of future conduct are not actionable under negligent misrepresentation. ECF No. 25-1 at 15. But the claimed misrepresentation is not a promise of *future* conduct.  Rather, Moore avers that CitiMortgage falsely agreed to release Tafalla, either intentionally or negligently.  On December 9, 2019, the parties executed the Divorce modification that did *not* include Tafalla.  ECF No. 25-2.

CitiMortgage also told Moore, Tafalla, and the Circuit Court in open court that it would release Tafalla from the loan and Deed of Trust, which was then memorialized in the Circuit Court's order reflecting the same. ECF No. 26-1. CitiMortgage's later insistence that Tafalla remain obligated to satisfy the mortgage, and thus must be added to the 2023 loan modification, makes plausible the falsity of its prior representations. Thus, the Court will not dismiss on this basis.

Nor will the Court dismiss the fraud allegation for failure to plead with particularity under Federal Rule of Civil Procedure 9(b). ECF No. 25-1 at 13. A fraud claim must "state with particularity the circumstances constituting fraud or mistake" to include the "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation." Fed. R. Civ. P. 9(b). The Amended Complaint satisfies these requirements: it pleads the time and place of the false statements and the person who made them. ECF No. 21 ¶¶ 13–14 (averring CitiMortgage counsel represented to the Court, during the December 23, 2019 hearing, that Tafalla would be removed from the Note and Deed of Trust). Accordingly, the alleged misrepresentations were sufficiently pleaded.[1]

CitiMortgage lastly argues that negligent misrepresentation fails because nothing makes plausible that it owed Moore a duty of care necessary to sustain a negligence claim. ECF No. 25-1 at 16. CitiMortgage is correct that generally, a mere bank-customer arrangement will not give rise to a tort duty absent a "special relationship" between the two. *Spaulding v. Wells Fargo Bank, N.A.*, 920 F. Supp. 2d 614, 620 (D. Md. 2012), *aff'd*, 714 F.3d 769 (4th Cir. 2013) (citing *Yousef v. Trustbank Sav., F.S.B.*, 568 A.2d 1134, 1138 (Md. Ct. Spec. App. 1990)). "But notably, even where

---

[1] Rule 9(b) applies solely to intentional, not negligent, misrepresentation. *See, e.g.*, *Baltimore County v. Cigna Healthcare*, 238 F. App'x 914, 921 (4th Cir. 2007) (citing *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007)). *See also Hunter v. Abbott Lab'ys, Inc.,* No. CV 25-1544-BAH, 2026 WL 479085, at *11 (D. Md. Feb. 20, 2026); *Stegelin v. Pac. Life Ins. Co.*, 592 F. Supp. 3d 474, 485 (D.S.C. 2022), *aff'd sub nom. Gugel v. Pac. Life Ins. Co.*, No. 23-1073, 2024 WL 194172 (4th Cir. Jan. 18, 2024).

there is no special relationship sufficient to give rise to a general negligence duty, courts have found that a lender 'had a duty to provide truthful information to Plaintiffs to maintain their mortgage in good standing,' and that it can be a breach of that duty to provide incorrect or false information." *Donnelly v. Branch Banking & Tr. Co.*, 91 F. Supp. 3d 683, 697 (D. Md. 2015) (quoting *Neal v. Residential Credit Solutions, Inc.*, No. JKB–11–3707, 2013 WL 428675, at *5 (D. Md. Feb. 1, 2013)). Likewise, "a duty may be breached where a party makes negligent statements of fact in the context of important contract negotiations." *Id.* (citing *Weisman v. Connors*, 540 A.2d 783, 793 (Md. 1988)).

When viewing the Amended Complaint most favorably to Moore, CitiMortgage minimally had a duty to speak truthfully in the Divorce case as to whether Tafalla would be removed from the mortgage loan and Deed of Trust, making Moore the sole obligor. This is so because the couple and the Circuit Court relied on CitiMortgage's concession as necessary to resolve the Divorce case. Had CitiMortgage truthfully disclosed its appetite for reneging on that representation in the future, the parties and Circuit Court plausibly would have proceeded differently. Because CitiMortgage's involvement went beyond a mere bank-customer arrangement to an instrumental third party in resolving the Divorce case, the Court concludes that CitiMortgage assumed a duty of care to speak honestly about Tafalla's continuing obligation on the mortgage. *See Griesi v. Atl. Gen. Hosp. Corp.*, 756 A.2d 548, 554 (Md. 2000) (a duty arises when there is "knowledge, or its equivalent, that the information is desired for a serious purpose; that he to whom it is given intends to rely and act upon it; that, if false or erroneous, he will because of it be injured in person or property.") (quoting *Weisman*, 540 A.2d at 792).

Cenlar, however, compels a different result. As CitiMortgage's servicer, Cenlar administered the mortgage and "enforce[d]" its terms. ECF No. 21 ¶ 5. But Cenlar had no direct

involvement in the Divorce case and made no representations whatsoever regarding the restructuring of the Deed of Trust or mortgage loan. With no complaint facts making plausible any misrepresentations from Cenlar, the claims fail as to it. ECF No. 24-1 at 11–12. Accordingly, Counts I and III are dismissed against Cenlar and survive against CitiMortgage.

### b. Breach of Contract

To state a claim for breach of contract, a plaintiff must make plausible that "the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001). "[A] court's interpretation of a contract is limited to the four corners of the agreement" giving all terms their plain and unambiguous meaning when read as a whole. *Wal-Mart Real Estate Bus. Tr. v. Garrison Realty Invs., LLC*, 657 F. Supp. 3d 757, 768 (D. Md. 2023) (citation omitted). Accordingly, the party asserting breach must advance some facts that make plausible the existence of a contractual obligation that defendant failed to honor. *Taylor*, 776 A.2d at 651.

The Amended Complaint obliquely avers that Defendants breached the Divorce modification by "demanding that Plaintiff add his ex-wife back onto the mortgage;" refusing to modify the loan agreement without Tafalla; and requiring Moore to pay a lump sum to bring his loan current. ECF No. 21 ¶¶ 37–40. However, the Amended Complaint is silent as to which provision in the Divorce modification Defendants are said to have breached. ECF No. 21. And nothing in the Divorce modification itself restricts how CitiMortgage may *respond* in the event of default. *See* ECF No. 25-2. Accordingly, offering Moore the 2023 loan modification which adds Tafalla cannot constitute a breach of the Divorce modification.

Moreover, the Divorce modification makes plain that in the event of default, "all the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default

in the making of payments under the Security Instrument also apply to default in the making of the payments due under this Agreement." ECF No. 25-2 at 6. The Deed of Trust, in turn, plainly permits CitiMortgage to "return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current." ECF No. 25-3 at 5. Thus, the lump sum demand also did not breach any other of the agreements between Moore and CitiMortgage.[2] The contract claim is dismissed.

### c.    MCPA/MCDCA

Turning next to Count IV. This Count alleges that CitiMortgage "used false or misleading oral or written statements or other representations" which had the "effect of deceiving or misleading" Moore during the Divorce modification negotiations; and that Cenlar attempted to enforce a right "which it knew or should have known did not exist" when it included Tafalla in the 2023 proposed modification. ECF No. 21 ¶¶ 54–55. From this, Moore avers violations of the MCPA and MCDCA. The Court addresses the sufficiency of each in turn.

For an MCPA claim to survive challenge, some complaint facts must make plausible that the defendant engaged in an unfair or deceptive practice or misrepresentation on which the plaintiff relied, causing actual injury. *Stewart v. Bierman*, 859 F. Supp. 2d 754, 768 (D. Md. 2012) (citing *Lloyd v. General Motors Corp.*, 916 A.2d 257, 277 (Md. 2007)). Defendants essentially concede that the MCPA claims rise and fall with the fraud claim. ECF No. 24-1 at 21; ECF No. 25-1 at 17. *See also Haley v. Corcoran*, 659 F. Supp. 2d 714, 724 (D. Md. 2009) (dismissing MCPA and intentional misrepresentation claims where Plaintiff failed to allege fraud with particularity).

---

[2] Moore's offhanded reference to Defendants' violation of the CARES Act, ECF No. 21 ¶ 40, has not been separately pleaded. *See* ECF No. 21. Nor does the CARES Act clearly provide a private cause of action. *See, e.g.*, *Profiles, Inc. v. Bank of Am. Corp.*, 453 F. Supp. 3d 742, 751 (D. Md. 2020) ("The Court is not persuaded that the language of the CARES Act evidences the requisite congressional intent to create a private right of action."); *see also Earley v. U.S. Dep't of Hous. & Urb. Dev.*, No. 121CV1437RDATCB, 2022 WL 2541915, at *8 (E.D. Va. July 7, 2022).

Accordingly, for the same reasons, the MCPA claim succeeds as to CitiMortgage and fails as to Cenlar.[3]

The MCDCA, however, is aimed solely at Cenlar as the servicer, averring a violation based on Cenlar's attempt to enforce a right which it knew or should have known did not exist. ECF No. 21 at ¶ 55. To be sure, the MCDCA prohibits enforcement of a nonexistent right. Md. Code Ann., Com. Law § 14-202. *See also Lewis v. McCabe, Weisberg & Conway*, LLC, No. CIV.A. DKC 13-1561, 2014 WL 3845833, at *6 (D. Md. Aug. 4, 2014) (citing *Pugh v. Corelogic Credco*, LLC, No. DKC 13-1602, 2013 WL 5655705, at *4 (D. Md. Oct. 16, 2013)). But some averred facts must make plausible that Cenlar knew *"the invalidity"* of the debt it sought to enforce. *Lindsay v. Rushmore Loan Mgmt.*, Servs., LLC, No. PWG-15-1031, 2017 WL 1230822, at *6 (D. Md. Apr. 4, 2017) (quoting *Pugh*, 2013 WL 5655705, at *4 (emphasis in original)). Fatal to the claim, however, is that Moore's default on the Divorce modification triggered CitiMortgage's right to collect the debt. Because CitiMortgage had the right to collect the debt, so too did its servicer. *See Marchese v. JPMorgan Chase Bank, N.A.*, 917 F. Supp. 2d 452, 463 (D. Md. 2013). Accordingly, no facts show that Cenlar attempted to collect a debt that it knew to be "invalid."

In response, Moore contends that the MCDCA violation lies in Cenlar's offer of the 2023 loan modification for which Tafalla was also an obligor. But this only makes plausible that Cenlar attempted to wrongly collect a debt against Tafalla. Moore, on the other hand, legitimately owed the debt. *Cf. Marchese*, 917 F. Supp. 2d at 464 (the MCDCA "only allows for recovery against

---

[3] CitiMortgage separately argues that the Amended Complaint fails to allege "actual injury." ECF No. 25-1 at 18. Moore avers a host of injuries flowing from CitiMortgage's false representation of releasing Tafalla from the Deed of Trust and mortgage loan, which induced Moore to settle the Divorce case. ECF No. 21 ¶¶ 53–57. Although pleaded poorly, the Amended Complaint does make plausible that Moore's reliance disadvantaged him financially because he assumed sole responsibility for a mortgage and property that was still encumbered by his ex-wife, hamstringing his ability to subsequently modify the mortgage loan. *Id.* Based on this, Moore contends he suffered diminished credit, inability to afford home repairs, and costs associated with prolonged foreclosure. *Id.* ¶¶ 49–52, 57. This is sufficient for the claim to proceed.

creditors that attempt to collect debts when there is no right to do so."). Thus, Moore cannot assert an MCDCA violation. *Id.* (citing *Stewart*, 859 F. Supp. 2d at 770).

Based on this, the Court grants dismissal of the MCPA claim against Cenlar and the MCDCA claim against both Defendants.

### c. RESPA

Lastly, the Amended Complaint asserts a RESPA violation based on Defendants' failure to recognize Moore's October 12, 2023, letter in which he asks Cenlar to remove Tafalla from its proposed loan modification. ECF No. 21 ¶¶ 22, 59–61. Moore particularly contends that Defendants failed to afford him the right to appeal Cenlar's proposed modification as required under RESPA regulations. *Id.* (citing 12 C.F.R. § 1024.41(h)).

RESPA aims to protect home buyers from abusive practices in the real estate mortgage industry. *Jones v. Wells Fargo Bank, N.A.*, Civ. No. 18-cv-08-ELH, 2018 WL 4382916, at *8 (D. Md. Sept. 12, 2018). Among other protections, RESPA affords a borrower the right to appeal a servicer's denial of a load modification application within fourteen days from the decision. 12 C.F.R. § 1024.41(h). Critically, however, the relevant regulation "requires a servicer to entertain an appeal only upon *denial* of an application." *Rupli v. Ocwen Loan Servicing, LLC*, Civ. No. 16-0181-DKC, 2016 WL 4141013, at *6 (D. Md. Aug. 4, 2016) (emphasis in original) (citing 12 C.F.R. § 1024.41(h)(1) ("[A] servicer shall permit a borrower to appeal the servicer's determination to deny a borrower's loss mitigation application for any trial or permanent loan modification program available to the borrower.")). Moore, however, attempted to appeal the terms of Cenlar's offer, not any denial of Moore's loan modification request. ECF No. 21 ¶ 59. Accordingly, the claim fails as a matter of law, and Count V must be dismissed.

## IV.     Dismissal With or Without Prejudice

The Court retains wide discretion in dismissing claims with or without prejudice.  *See Weigel v. Maryland*, 950 F. Supp. 2d 811, 825–26 (D. Md. 2013).  Dismissal with prejudice is justified where, as here, Moore was already alerted to the pleading defects through Defendants' motions to dismiss the original complaint, ECF Nos. 14 & 15, and nonetheless failed to cure those defects. ECF No. 21.  *See Glover v. Loan Science, LLC*, Civ. No. PWG-19-01880, 2020 WL 3960623, at *3 (D. Md. July 13, 2020) (citing *Adams v. Sw. Va. Reg'l Jail Auth.*, 524 F. App'x 899, 900 (4th Cir. 2013)).  Nor can the Court discern how Moore could cure the factual shortcomings if allowed a third bite at the apple. *See McLean v. United States*, 566 F.3d 391, 401 (4th Cir. 2009), abrogated on different grounds by *Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721 (2020).  Thus, the Court grants Cenlar's motion to dismiss as to all claims with prejudice.  The Court further grants CitiMortgage's motion to dismiss as to the breach of contract, MCDCA and RESPA claims also with prejudice.

## V.     Conclusion

For the foregoing reasons, the Court grants Cenlar FSB's Motion to Dismiss (ECF No. 24) and grants in part and denies in part CitiMortgage, Inc.'s Motion to Dismiss (ECF No. 25).  Counts I, III, and the MCDCA claim against CitiMortgage will proceed.  All other claims are dismissed with prejudice.  A separate Order follows.


   07/23/2026                                              /s/
Date                                                  Paula Xinis
                                                      United States District Judge